**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   Criminal No. AW-11-552 |
| | * |
| CHARLES JOHNSON, | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

The Government has charged Defendant Charles Johnson with the receipt and possession of child pornography under 18 U.S.C. § 2252A(a)(2).  Presently pending before the Court is Government's Motion *in Limine* to preclude Defendant Johnson from asserting a literary or research defense during trial.  Doc. 23.  On June 12, 2012, the Court considered parties' arguments.  For the reasons stated in open court and as clarified below, the Court **GRANTS** the Government's Motion *in Limine*.

Defendant seeks to present the affirmative defense that, to the extent in which Defendant engaged in the conduct charged, it was in furtherance of his work as a writer and researcher (hereinafter "literary defense").  According to Defendant, barring such a defense violates his First Amendment and Due Process rights.  The Court addresses each contention in turn.

**LEGAL ANALYSIS**

**I.    Defendant's First Amendment Challenge**

Defendant cites *Miller v. California*, 413 U.S. 15 (1973), for the proposition that the First Amendment protects serious literary work and thus affords Defendant a literary defense.  In

1

*Miller*—an adult obscenity case—the Court held that material with "serious literary, artistic, political, or scientific value" merits First Amendment protection. *Miller v. California*, 413 U.S. 15, 24 (1973). According to Defendant, *Miller's* obscenity standard is applicable to child pornography cases. Therefore, Defendant argues that he should be allowed to present a literary defense and that a jury would determine whether his research constitutes serious literary work.

    A.    *New York v. Ferber*

However, Defendant's reliance on *Miller* ignores *New York v. Ferber*, 458 U.S. 747 (1982), a landmark case where the Supreme Court unanimously held that child pornography is not entitled to First Amendment protection. *See New York v. Ferber*, 458 U.S. 747, 763 (1982) ("Recognizing and classifying child pornography as a category of material outside the protection of the First Amendment is not, incompatible with our earlier decisions."). In *Ferber*, the Court recognized that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," *Id.* at 757, and thus legislatures are "entitled to greater leeway in the regulation of pornographic depictions of children" as compared to the regulation of obscene materials. *Id.* at 756.

In distinguishing adult obscenity from child pornography, the *Ferber* Court rejected Defendant's contention that receipt and possession of child pornography is protected by the First Amendment when the conduct is in furtherance of serious literary work. According to the Court, "[i]t is irrelevant to the child who has been abused whether or not the material . . . has a literary, artistic, political or social value . . . We therefore cannot conclude that the *Miller* standard is a satisfactory solution to the child pornography problem." *Ferber*, 458 U.S. at 761 (internal quotations omitted).

In short, the *Ferber* Court concluded that "[w]hen a definable class of material, such as [child pornography], bears so heavily and pervasively on the welfare of children . . . it is permissible to consider these materials as without the protection of the First Amendment." *Ferber*, 458 U.S. at 764.

### B.   *United States v. Matthews*

The Fourth Circuit has also firmly established, in accordance with the Supreme Court, that the First Amendment affords no protection to child pornography offenses, regardless of the motivations of the possessor.  *See United States v. Matthews*, 209 F.3d 338, 345 (2000) ("[A]lthough the obscenity test for adult pornography contains the type of First Amendment defense that Matthews urges us to recognize, the Ferber Court unequivocally rejected [a literary defense] in the context of child pornography offenses.").  In fact, Defendant's First Amendment challenge has already been addressed in a case involving nearly identical facts and legal arguments, *United States v. Matthews*, 209 F.3d 338 (2000).

Like Defendant Johnson, Matthews argued that § 2252 unconstitutionally infringes on the First Amendment when applied to a bona fide researcher.  *See Matthews*, 209 F.3d at 340. Practically speaking, Johnson and Matthews proposed identical First Amendment defenses. Both defendants derived their literary defense from *Miller*, arguing that the *Ferber* Court recognized the possibility of a First Amendment defense in limited circumstances.  *See id.* at 341; Doc. 38 at 4.

Yet, the *Matthews* court clearly rejected such an argument, finding that *Ferber* foreclosed literary defenses like the one proposed by Defendant.  *See Matthews,* 209 F.3d at 345 ("The broad First Amendment defense Matthews seeks to assert, which derives from the obscenity test for adult pornography, is simply irreconcilable with the *Ferber* Court's express conclusion that

3

material containing 'serious literary, artistic, political, or scientific value may nevertheless embody the hardest core of child pornography.'") (quoting *Ferber*, 458 U.S. at 761). Nonetheless, despite the holding in *Matthews*, Defendant reargues an issue that the Fourth Circuit has already adjudicated.

Although Defendant recognizes that the *Matthews* court disallowed a literary defense, he summarily concludes—without providing any legal justification—that the *Matthews* case was "decided in error and that there is a bona fide First Amendment protection to engage in the type of investigative reporting and research described in the Matthews' opinions . . . ." Doc. 38 at 4–5. Instead, Defendant insists that *Matthews* is inapplicable by focusing on minute and inconsequential differences.

First, Defendant maintains that *Matthews* only addresses the First Amendment's protection of the press. *See* Doc. 38 at 3–4. Defendant asserts that he is not a member of the press; he is a writer and researcher. As such, Defendant claims his literary defense is predicated on free speech grounds. *See id.* at 4.

Setting aside the Court's skepticism that the distinction between a journalist and a "writer and researcher" is of any import, Defendant's assertion still fails. Both *Ferber* and *Matthew* analyzed whether any portion of the First Amendment affords defendants a literary defense. Defendant cannot, and does not, identify any place in either opinion where the courts distinguish between the freedoms of press and speech. Rather, to support his contention, Defendant quotes this Court's opinion in *United States v. Matthews*, 11 F. Supp. 2d 656 (1998) (holding that a journalist's use of child pornography images is not protected by the First Amendment). Consequently, the Court was able to respond, in open court, that nothing indicates the Court

would have held that the defendant's activities were protected by the First Amendment's right to free speech.

Second, Defendant attempts to distinguish the facts in this case from *Matthews* by explaining that Defendant did not distribute or transport child pornography. *See* Doc. 38 at 3. Therefore, the harm Defendant inflicted on children is comparatively insignificant. *See id.* As elaborated below, this contention also fails for lack of legal support. *See infra* Part I.C.

### C.   The Availability of Viable Exceptions to *Ferber's* Holding

As indicated above, Defendant's assertion that he is entitled to present a literary defense relies on the premise that *Ferber* permits a First Amendment defense under narrow circumstances. Defendant posits that his conduct—viewing child pornography for research purposes—falls into this limited exception. According to Defendant, because he did not produce or distribute sexually explicit images, his actions do not further victimize or exploit minors. As such, his literary defense is admissible. Defendant's argument fails for a multitude of reasons.

To begin with, Defendant misconstrues the *Ferber* Court's meaning when it notes there are "limits on the category of child pornography . . . unprotected by the First Amendment." *See Ferber*, 458 U.S. at 764. As the next sentence evinces, the Court's discussion largely stresses that any prohibited conduct must be adequately defined. *See id.*; *Matthews*, 209 F.3d at 343 (explaining that the *Ferber* Court's "strictures do not establish a 'legitimate' value exception to legislative prohibitions on the distribution of child pornography, but rather emphasize the need for clarity in statutory language imposing such prohibitions"). The *Ferber* Court further clarified its definition of limits by explaining that any statute criminalizing the distribution of child pornography must precisely define the prohibited conduct, must be limited to works visually depicting sexual conduct by children below a specified age, and must expressly include a

scienter requirement. *See Ferber*, 458 U.S. at 764–65; *Matthews*, 209 F.3d at 343. Not only does § 2252A comport with the *Ferber* Court's articulated principles; more importantly, none of the aforementioned limits "establish the availability of a First Amendment defense . . . ." *See Matthews,* 209 F.3d at 344.

Even assuming *arguendo* that *Ferber* carves out a limited First Amendment defense, Defendant has provided no support—beyond his own theoretical conjecture—to substantiate his belief that his behavior falls into this supposed exception. First, Defendant fails to cite—nor is the Court aware—of any cases that differentiate between the receipt and distribution of child pornography, let alone attribute any significance to this distinction. In fact, under § 2252A(a)(2), any person who "knowingly receives or distributes" child pornography is charged with the same count, which further indicates that there is no material, legal distinction between the two actions.

Second, and most importantly, Defendant is unable to identify a single case, arising from anywhere in the country, where a court has permitted a literary defense because a defendant only viewed child pornography. In fact, Defendant does not even cite a single case where a court held that a broad literary defense is admissible in the context of child pornography.

## II.     Defendant's Due Process Challenge

In addition to his First Amendment challenge, Defendant asserts that the Government's Motion *in Limine* violates his due process rights because it prohibits him from presenting a defense and testifying on his own behalf. *See* Doc. 38 at 2–3. According to Defendant, testimony regarding his research is directly relevant and essential to the issue of *mens rea*. *See id.* As such, Defendant claims that denying him the opportunity to present a literary defense prevents him from taking the stand or presenting evidence to demonstrate that he lacked the mental state required. *See id.*

### A.      Defendant's Ability to Present a Defense and Testify

Under § 2252A, the Government must prove, by direct or circumstantial evidence, that Defendant knowingly received and possessed child pornography. It is noteworthy that preventing Defendant from introducing a literary defense does not alter this scienter requirement nor does it affect the Government's burden of proof.

More importantly, as emphasized in open court, the Court's ruling does not prevent Defendant from forwarding a viable defense; Defendant retains the right to introduce evidence regarding his mental state via. witnesses, experts, exhibits, etc. Similarly, the Court's decision does not strip Defendant of his Fifth Amendment right to testify.

The Court clearly articulated to Defendant his right to testify or not to testify. Defendant indicated that he understood this Fifth Amendment right and elected not to take the witness stand. The Court respected his decision and fully instructed the jury, at both the trial's start and end, that they must not attach any significance nor draw any adverse inferences based on Defendant's choice not to testify. *See* Jury Instruction No. 28 (quoting L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Modern Federal Jury Instructions: Criminal*, 5-2). Furthermore, the Court stressed to the jury that Defendant has no obligation to testify, call witnesses, or present evidence since it is the Government's burden throughout the entire trial to prove Defendant guilty beyond a reasonable doubt. *See id.*; Jury Instruction No. 9 (quoting Sand, *Modern Federal Jury Instructions: Criminal*, 4-1). The Court clearly explained that Defendant is presumed innocent throughout the trial and that this presumption continues into jury deliberations. *See* Jury Instruction No. 9 (quoting Sand, *Modern Federal Jury Instructions: Criminal*, 4-1). There is no indication that the jury did not honor these instructions.

In short, the Court's decision to grant the Government's Motion *in Limine* only precludes Defendant from testifying about an insular issue, his literary defense. Simply because Defendant cannot discuss First Amendment issues, this prohibition does not preclude him from testifying or presenting evidence about other issues related to *mens rea*. Defendant was still free to present testimony evincing that he lacked knowledge. For example, if applicable, Defendant could have offered evidence that he lacked the technical expertise to knowingly receive and possess child pornography or that the images were downloaded without Defendant's knowledge.

As the *Matthews* court explained, although "every man deserves his day in court . . . the law does not permit a defendant to present a defense unless the law recognizes that defense." *Matthews*, 209 F.3d at 344. As discussed above, the law indisputably disallows a literary defense in child pornography cases. *See supra* Part I. Barring Defendant from expounding on a legally unaccepted defense is not synonymous with denying Defendant his due process rights.

### B.   The Relevance of a Literary Defense to *Mens Rea*

Furthermore, Defendant's contention that asserting a literary defense is absolutely necessary to prove he lacked the requisite *mens rea* must be rejected. To convict Defendant, the Government must prove he acted knowingly, meaning that he acted "intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness." Sand, *Modern Federal Jury Instructions: Criminal*, 3A-1. The Government must also establish that Defendant "had knowledge or an awareness that the material contained a visual depiction of a minor engaged in sexually explicit conduct." *Id.* at 62-24.

Based on these definitions, it is clear that a literary defense is not the *sine qua non* in demonstrating that Defendant either did not act knowingly or lacked knowledge. According to Defendant, he viewed images of child pornography in order to research a book analyzing the

various perceptions of sexual fantasy involving children.[1] Therefore, to conduct this research, Defendant must have actively sought out images of child pornography. In short, his actions must have been intentional and voluntary; not ones performed mistakenly or accidentally. Similarly, the subject matter of Defendant's book necessitated that he be aware of the sexually explicit nature of the images. After all, his purported research entailed an investigation of depictions of children engaged in sexually explicit conduct.

Thus, implicit in Defendant's argument is the flawed assumption that the "knowing" requirement of § 2252A requires the Government to prove that Defendant acted with bad motive or evil intent. This postulation directly conflicts with the case law, which firmly establishes that a possessor's motivations, good or bad, are irrelevant to the issue of *mens rea*. *See, e.g., Matthews*, 209 F.3d at 352 ("The scienter requirement Congress did choose–"knowingly"– evidences no intent to exempt 'innocent' use of child pornography from prosecution."); *United States v. Fox*, 248 F.3d 394, 407–08 (5th Cir. 2001) (finding defendant's defense that he was investigating child pornography "seriously mischaracterizes the statute's scienter element: the government must prove that the defendant *knowingly*, i.e., voluntarily and intentionally, received child pornography . . . .").

---

[1] Although the Court takes no position regarding the substance of Defendant's literary defense, the Court notes that Defendant's proffered evidence appears to be inconsistent with the Government's evidence. According to the evidence introduced by the Government, during a search of Defendant's home, Defendant admitted that he found images of child pornography "sexy" and that because his wife travelled extensively, he needed them to become aroused. The Government also stresses that during this interview, Defendant never mentioned that the underlying reason for his conduct was to research and publish a book.

9

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Government's Motion *in Limine*. A separate order will follow.

| | |
|---|---|
| June 15, 2012 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |